UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Kendra Haley,** | ) | Civil Action No.:_____ |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| **Synchrony Bank,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Kendra Haley, for actual, statutory, and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (hereinafter "FCRA"). Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of South Carolina common law set forth herein.

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

1

4.  To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681c and 1681e, which are two of the cornerstone provisions of the FCRA.

5.  One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

6.  The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

## JURISDICTION AND VENUE

7.  This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331, §1332, and §1367.

8. Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

**PARTIES**

9. Plaintiff, Kendra Haley, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant Synchrony Bank ("Synchrony"), whose corporate status is unknown to Plaintiff, may be served with process by way of its CEO, Brian D. Doubles, at its corporate headquarters, 777 Long Ridge Rd., Stamford. CT 06902. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

**FACTUAL ALLEGATIONS**

11. On or about October 14, 2022, Plaintiff's secure and stable life as she knew it was stolen from her when she learned that, since the death of one of her infant twins, her husband had developed a gambling addiction and had been opening lines of credit and/or credit card accounts in Plaintiff's name without her knowledge or consent.

12. On July 1, 2022, Defendant wrongfully accessed and did a hard inquiry of Plaintiff's Trans Union credit report without Plaintiff's authorization or consent. Plaintiff did not apply for or request credit from Defendant.

13. Thereafter, Defendant allowed Plaintiff's husband to open a fraudulent SYNCB/AMAZON Credit Card account, initially ending in 9565, then 6669, and finally 7573 (hereinafter referred to as "the Account") in Plaintiff's name.

14.     Plaintiff did not authorize or in any way allow this Account to be opened in her name and same was done without her knowledge or permission.

15.     On October 15, 2022, Plaintiff filed a police report with the Florence County Sheriff's Office regarding the theft of her identity to open numerous fraudulent accounts, including this Account.

16.     On October 28, 2022, Plaintiff filled out and submitted a Federal Trade Commission ID Theft Report.

17.     On or about December 2, 2022, Plaintiff sent a dispute letter to TransUnion stating the Account had been fraudulently opened in Plaintiff's name without her authorization ("First TransUnion Dispute"). Plaintiff stated that her husband had opened numerous accounts, including the Account, in her name, without her knowledge or permission, to feed his gambling addiction. With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. TransUnion received this dispute on December 19, 2022, and forwarded same to Defendant.

18.     On or about December 2, 2022, Plaintiff sent a dispute letter to Experian stating the Account was a fraud account opened in Plaintiff's name without her knowledge ("First Experian Dispute"). With her dispute, Plaintiff included her name, address, date of birth, and Social Security number. Experian received this dispute on December 19, 2022, and forwarded same to Defendant.

19.     On or about December 12, 2022, Plaintiff sent a dispute letter to Equifax stating the Account was a fraud account opened in Plaintiff's name without her knowledge ("First Equifax Dispute"). With her dispute, Plaintiff included her name, address, date of birth,

and Social Security number.

20.  On December 16, 2022, Defendant wrongfully accessed and viewed Plaintiff's Experian credit report without Plaintiff's authorization or consent.

21.  On or about December 25, 2022, in response to Plaintiff's First Equifax Dispute, Equifax sent Plaintiff correspondence stating it could not locate Plaintiff's credit file and requesting proof of Plaintiff's identification and address.  Plaintiff complied with Equifax's request and mailed the sought-after information via certified mail. On January 18, 2023, Equifax received the requested information and, thereafter forwarded Plaintiff a copy of her credit file dated January 20, 2023, which showed Defendant was reporting the Account as belonging to Plaintiff.

22.  On or about December 30, 2022, Defendant sent Plaintiff a letter concerning the Account, stating Synchrony "understand[s] that experiencing fraud can be upsetting and we want to assure you the Synchrony Fraud Team is here to help."  In this letter Defendant specifically informed Plaintiff that it had immediately closed the Account, notified the major credit bureaus to remove the Account from her credit reports, and initiated an investigation and flagged your information in our system to prevent additional accounts from being opened in her name without additional verification.

23.  Less than a week later, on or about January 5, 2023, Defendant responded to Experian's ACDV verifying the Account as accurate and adding consumer compliance code XR.  As a result of Defendant's response to Experian, the fraudulent Account continued to report on Plaintiff's Experian credit report as belonging to her.

24.  On or about January 11, 2023, Plaintiff received the results of TransUnion's alleged

5

investigation into the First TransUnion Dispute, wherein TransUnion informed Plaintiff that Defendant had verified and updated the information being reported on the Account. As a result, the fraudulent Account continued to be reported on Plaintiff's TransUnion credit report as belonging to Plaintiff.

25. On January 24, 2023, Defendant wrongfully accessed and viewed Plaintiff's Experian credit report without Plaintiff's authorization or consent.

26. On February 27, 2023, Defendant wrongfully accessed and viewed Plaintiff's TransUnion credit report as an "account review" without Plaintiff's authorization or consent.

27. On March 2, 2023, Defendant wrongfully accessed and viewed Plaintiff's TransUnion credit report as an "account review" under the name SyncB/Your Credit Score without Plaintiff's authorization or consent.

28. On March 7, 2023, Defendant again wrongfully accessed and viewed Plaintiff's TransUnion credit report as an "account review" without Plaintiff's authorization or consent.

29. On or about February 28, 2023, Plaintiff sent a second dispute to Equifax stating that the Account had been fraudulently opened in Plaintiff's name without her knowledge ("Second Equifax Dispute"). With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On March 7, 2023, Equifax received Plaintiff's Second Equifax Dispute and forwarded same to Defendant.

30. On or about February 28, 2023, Plaintiff sent a second dispute to TransUnion again stating that the Account was a fraud account opened in Plaintiff's name without her knowledge ("Second TransUnion Dispute"). With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On or about March 6, 2023,

TransUnion received the Second TransUnion Dispute and forwarded same to Defendant.

31. On or about February 28, 2023, Plaintiff sent a second dispute to Experian stating the Account had been fraudulently opened in Plaintiff's name without her authorization ("Second Experian Dispute"). With her dispute, Plaintiff again included her name, address, date of birth, and Social Security number. On or about March 6, 2023, Experian received the Second Experian Dispute and forwarded same to Defendant.

32. On or about March 13, 2023, Plaintiff received the results of Equifax's investigation into her Second Equifax Dispute showing Plaintiff's dispute of the Account as "Reinvestigation in Progress." Despite Plaintiff's dispute, the Account continued to be reported as belonging to Plaintiff on her Equifax credit file.

33. On March 20, 2023, Defendant wrongfully accessed and viewed Plaintiff's Experian credit report without Plaintiff's authorization or consent.

34. On or about March 21, 2023, Defendant responded to Experian's ACDV verifying the disputed Account as accurate and updating certain Account information. Additionally, Defendant removed the consumer compliance code. As a result of Defendant's response to Experian, the disputed Account continued to report on Plaintiff's Experian credit report as belonging to her.

35. On or about March 22, 2023, Plaintiff received Trans Union's Investigation Results, wherein Trans Union informed Plaintiff that Defendant had verified the Account as accurate and updated account information. As a result, the disputed Account continued to be reported on Plaintiff's Trans Union credit file.

36. On or about March 27, 2023, Plaintiff sent another dispute to Equifax which again

7

stated that Plaintiff had been the victim of identity theft and fraud and that the Account was not her account, but rather a fraudulent account opened in her name without her knowledge ("Third Equifax Dispute"). With this dispute, Plaintiff included a copy of the police report she filed which stated that Plaintiff's husband had opened several fraudulent accounts in Plaintiff's name to fund his gambling addiction. The police report stated that Plaintiff's husband had admitted these actions in a "three-page paper" and that same had been taken into evidence. On or about April 4, 2023, Equifax received Plaintiff' Third Equifax Dispute and forwarded same, including a copy of the police report, to Defendant.

37.     On or about March 27, 2023, Plaintiff sent a third dispute to TransUnion wherein she disputed the Account as "not my account," and "this is a fraud account" ("Third TransUnion Dispute"). With this dispute, Plaintiff included a copy of the police report she filed which stated that Plaintiff's husband had opened several fraudulent accounts in Plaintiff's name to fund his gambling addiction. The police report stated that Plaintiff's husband had admitted his actions in a "three-page paper" and that same had been taken into evidence. On or about April 3, 2023, TransUnion received Plaintiff's Third TransUnion Dispute and forwarded same, including a copy of the police report, to Defendant.

38.     On or about March 28, 2023, Plaintiff sent another dispute to Experian which again stated that Plaintiff had been the victim of identity theft and that the Account was a fraud account opened in her name without her knowledge ("Third Experian Dispute"). With this dispute, Plaintiff included a copy of the police report she filed which stated that Plaintiff's husband had opened several fraudulent accounts in Plaintiff's name to fund his gambling addiction. The police report stated that Plaintiff's husband had admitted his actions in a

"three-page paper" and that same had been taken into evidence. On or about April 3, 2023, Experian received Plaintiff's Third Experian Dispute and forwarded same, including a copy of the police report, to Defendant.

39. On or about April 8, 2023, Plaintiff received Equifax's Investigation results, with a copy of Plaintiff's Equifax credit file showing the disputed Account continued to be reported as belonging to Plaintiff. Additionally, Defendant was no longer reporting the Account as disputed.

40. On April 17, 2023, Defendant responded to Experian's ACDV verifying that the disputed Account information was accurate. As a result, the Account continued to be reported as belonging to Plaintiff on her Experian credit reports.

41. On or about April 20, 2023, Plaintiff received TransUnion's Investigation Results wherein TransUnion stated the Account had been updated by Defendant. As a result, the Account continued to be reported on Plaintiff's TransUnion credit report as belonging to Plaintiff. Additionally, Plaintiff's updated credit report showed that Defendant again wrongfully accessed and viewed her credit report for an account review on April 3, 2023, and April 11, 2023.

42. On or about May 19, 2023, Plaintiff sent a fourth and final dispute letter to Experian wherein she again stated that she had been the victim of identity theft and fraud and that the Account was not her account ("Fourth Experian Dispute"). Plaintiff again included a copy of the police report she filed. On or about May 24, 2023, Experian received the Plaintiff's Fourth Experian Dispute.

43. On or about June 14, 2023, Defendant sent Plaintiff a letter informing her that the

Account was past due and that a minimum payment of $148 was due on June 18, 2023.

44. On or about June 28, 2023, Defendant sent Plaintiff a Notice of Right to Cure for the Account stating the last day for the payment of $148 to be made was July 18, 2023.

45. On or about June 29, 2023, Defendant sent Plaintiff a letter informing her that a recent review conducted by Synchrony Bank identified that Plaintiff contacted Defendant on April 13, 2023, regarding the Account.

46. On or about July 14, 2023, Defendant sent Plaintiff a letter via certified mail stating the Account was past due and that a minimum payment of $245 was due by July 18, 2023.

47. On or about August 14, 2023, Defendant sent Plaintiff a collection letter on the Account informing her a minimum payment of $346 was due on August 18, 2023.

48. On or about September 11, 2023, Plaintiff sent a letter directly to Defendant again informing Defendant the Account had been fraudulently opened in Plaintiff's name without her knowledge or permission. Plaintiff attached a copy of the police report she had filed and also asked Defendant to provide her with all documents used to open the Account so she could forward them to the police. Finally, Plaintiff requested Defendant stop all collection activities on the Account and stop reporting it on her credit reports.

49. Defendant received Plaintiff's letter on September 15, 2023.

50. On or about September 13, 2023, Defendant sent Plaintiff a collection letter on the Account stating a minimum payment of $449 was due on or before September 18, 2023.

51. Plaintiff received statements on the Account for the months of July, August, September, and October 2023.

52. On or about October 13, 2023, Defendant sent Plaintiff a letter stating the Synchrony

Fraud Solutions Team had reviewed her claim and found the Account was not opened by her. As a result, Defendant again claimed it had shut down the Account, cleared Plaintiff from all responsibility of the purchases, and notified the major credit bureaus to delete the Account from her credit files.

53. From July 2022 through at least October 2023, Defendant reported false, libelous, and defamatory information regarding the Plaintiff to the national credit bureaus and to numerous third parties. While Defendant was reporting the fraudulent Account as belonging to Plaintiff on all of her credit reports, said information was provided to and/or viewed by Allstate Insurance, Nationstar Mortgage, LLC, Crown Asset Management, Velocity Portfolio Group, JPMCB, SOFI Lending, USAA Federal Savings Bank, Citibank, Freedom Financial Asset, MUSC Health, LexisNexis, and others.

54. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
### (Fair Credit Reporting Act)

55. The Plaintiff adopts the averments and allegations of paragraphs 11 through 54 hereinbefore as if fully set forth herein.

56. Defendant violated 15 U.S.C. §1681s-2(b) by failing to investigate the accuracy of the information reported by the Defendant to the consumer reporting agencies.

57. On at least one occasion within the past two years, by example only and without

limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate after receiving notice that the Plaintiff disputed the information said Defendant had provided to a consumer reporting agency.

58.    On at least one occasion within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

59.    As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(A) and (B), Plaintiff suffered actual damages, including but not limited to: damage to reputation and credit reputation, lost credit opportunities, a reduced credit score, an increase in insurance costs, feelings of hopelessness, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain including a dramatic increase in blood pressure, loss of enjoyment of life, and mental anguish.

60.    The law in this District, the Fourth Circuit, and even nationally has long ago been articulated to require a detailed and searching investigation by a furnisher when it receives a consumer's FCRA dispute through a consumer reporting agency.

61.    Defendant completely failed and/or refused to conduct a detailed and searching inquiry as required by the FCRA. Instead, Defendant simply verified the Account each and every time it received an ACDV regarding Plaintiff's dispute of the Account as fraudulent, even after Defendant had already notified Plaintiff in December of 2022 that it had confirmed the Account was fraudulent.

62.    The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the

alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

63. Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by a jury pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT TWO
### (Fair Credit Reporting Act)

64. The Plaintiff adopts the averments and allegations of paragraphs 11 through 63 hereinbefore as if fully set forth herein.

65. On one or more occasions within the past two years, by example only and without limitation, Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing the Defendant's inaccuracies within Plaintiff's credit files with the credit reporting agencies by failing to correctly report results of an accurate investigation to each credit reporting agency.

66. Defendant violated 15 U.S.C. §1681s-2(b)(1)(C) by reporting inaccurate, incomplete, false, and misleading results of the investigation, if any, to at least one consumer reporting agency.

67. Defendant violated 15 U.S.C. §1681s-2(b)(1)(D) by failing to notify all consumer reporting agencies that the reporting of the accounts the subject of this action was inaccurate, incomplete, false, and misleading.

68. As a result of Defendant's violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: damage to reputation and

13

credit reputation, lost credit opportunities, a reduced credit score, an increase in insurance costs, feelings of hopelessness, embarrassment, humiliation, frustration, anxiety, loss of sleep, worry, physical sickness and pain including a dramatic increase in blood pressure, loss of enjoyment of life, and mental anguish.

69.     The violations by Defendant were willful, rendering it liable for punitive damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, entitling the Plaintiff to recovery under 15 U.S.C. §1681o.

70.     The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees, pursuant to 15 U.S.C. §1681n and §1681o.

## COUNT THREE
### (Violation of the Fair Credit Reporting Act)

71.     Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 70 as if set forth fully herein.

72.     TransUnion, LLC ("TransUnion"), and Experian Information Solutions, Inc. ("Experian"), the entities from which Defendant obtained Plaintiff's credit reports, are consumer reporting agencies within the meaning of the Fair Credit Reporting Act.

73.     The credit reports Defendant obtained from TransUnion and Experian relating to Plaintiff were "consumer reports" within the meaning of the Fair Credit Reporting Act.

74.     Under 15 U.S.C. §1681b(f), Defendant is prohibited from obtaining Plaintiff's credit reports unless Defendant has a permissible purpose for obtaining said reports.

75.     Defendant's obtainment of Plaintiff's credit reports when Plaintiff did not initiate same by way of applying for credit was a violation of 15 U.S.C. §1681b(f) as Plaintiff did

not authorize Defendant to retrieve or view her credit report nor was a firm offer of credit made to Plaintiff.

76. Defendant had no permissible purpose in obtaining Plaintiff's credit reports.

77. In connection with Defendant's practices of obtaining credit reports without a permissible purpose, and specific to Defendant having obtained Plaintiff's credit reports without a permissible purpose, Defendant acted negligently.

78. In connection with Defendant's practices, Defendant certified to TransUnion and Experian that it was requesting Plaintiff's credit report in response to a request by Plaintiff when, in actuality, said request was made without Plaintiff's permission or knowledge. Accordingly, Defendant obtained the credit reports through false pretenses within the meaning of 15 U.S.C. §1681n(b).

79. As a result of Defendant's negligent practice of violating the Fair Credit Reporting Act, Plaintiff has been caused to suffer damage to her credit reputation and credit score, worry, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of life, physical sickness including a dramatic rise in blood pressure, physical pain and mental anguish for which Plaintiff seeks actual damages.

80. As a result of Defendant's negligent practice of violating the Fair Credit Reporting Act, Defendant is liable under 15 U.S.C. §1681o for the costs of bringing this action as well as reasonable attorneys' fees.

### COUNT FOUR
**(Violation of the Fair Credit Reporting Act)**

81. Plaintiff hereby adopts all of the allegations set forth in paragraphs 11 through 80

as if set forth fully herein.

82.     TransUnion and Experian, the entities from which Defendant obtained Plaintiff's credit reports, are consumer reporting agencies within the meaning of the Fair Credit Reporting Act.

83.     The credit reports Defendant obtained from TransUnion and Experian relating to Plaintiff were "consumer reports" within the meaning of the Fair Credit Reporting Act.

84.     Under 15 U.S.C. §1681b(f), Defendant is prohibited from obtaining Plaintiff's credit reports unless Defendant has a permissible purpose for obtaining said reports.

85.     Defendant's obtainment of Plaintiff's credit reports when Plaintiff did not initiate same by way of applying for credit was a violation of 15 U.S.C. §1681b(f) as Plaintiff did not authorize Defendant to retrieve or view her credit report nor was a firm offer of credit made to Plaintiff.

86.     Defendant had no permissible purpose in obtaining Plaintiff's credit reports.

87.     In connection with Defendant's practices of obtaining credit reports without a permissible purpose, and specific to Defendant having obtained Plaintiff's credit reports without a permissible purpose, Defendant acted willfully, knowingly, and in conscious disregard for the rights of Plaintiff under the Fair Credit Reporting Act.

88.     In connection with Defendant's practices, Defendant certified to TransUnion and Experian that it was requesting Plaintiff's credit report in response to a request by Plaintiff when, in actuality, said request was made without Plaintiff's permission or knowledge. Accordingly, Defendant obtained the credit reports through false pretenses within the meaning of 15 U.S.C. §1681n(b).

89. As a result of Defendant's willful practice of violating the Fair Credit Reporting Act, Plaintiff has been caused to suffer damage to her credit reputation and credit score, worry, humiliation, fear, loss of sleep, anxiety, nervousness, loss of enjoyment of life, physical sickness including a dramatic rise in blood pressure, physical pain and mental anguish for which Plaintiff seeks actual damages. Furthermore, Defendant is liable under 15 U.S.C. §1681n for punitive damages in an amount sufficient to deter Defendant from engaging in this kind of illegal practice in the future.

90. As a result of Defendant's willful practice of violating the Fair Credit Reporting Act, Defendant is liable under 15 U.S.C. §1681o for the costs of bringing this action as well as reasonable attorneys' fees.

## COUNT FIVE
### (Defamation, Libel, and Slander)

91. The Plaintiff adopts the averments and allegations of paragraphs 11 through 90 hereinbefore as if fully set forth herein.

92. Defendant willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding Plaintiff to third parties and the public at large. Said statements harmed Plaintiff's reputation and caused Plaintiff physical sickness, mental anguish, and emotional distress.

93. Said communications were false in that Plaintiff was not indebted to Defendant. Plaintiff did not owe any balance on the Account the subject of this action as said Account was clearly fraudulent.

94. Said false and defamatory statements have harmed the reputation of Plaintiff and/or

deterred third persons from associating with Plaintiff. Specifically, Defendant reported the Account to the national credit reporting agencies as belonging to Plaintiff so the Account would appear on Plaintiff's credit reports. Plaintiff's credit reports were viewed by numerous third parties as set out above and Plaintiff's cost of insurance increased.

95. Defendant communicated to third parties and the public at large false information concerning Plaintiff, disseminating and imputing false and misleading credit worthiness information concerning Plaintiff, including but not limited to reporting that Plaintiff owed the Account the subject of this action.

96. At the time said communications were made, Defendant knew or should have known the falsity of the communications or recklessly disregarded the potential inaccuracy of the information, yet knowingly, willfully, and maliciously communicated the falsity.

97. As a result of Defendant's intentional communications to third parties of the false information, Plaintiff was caused to suffer injury to her reputation in the eyes of her community and the public at large, and was forced to endure credit reporting of the Account in spite of the fact that Plaintiff did not owe the Account as it fraudulently opened in her name without her knowledge or permission.

98. As a proximate consequence of said defamation, libel and slander, Plaintiff was caused to have negative credit reports, to be held up to public ridicule or shame, to have her insurance costs increased, and made to suffer humiliation, anxiety, loss of sleep, anger, worry, physical sickness, loss of enjoyment of life, and mental anguish for which she claims compensatory and punitive damages.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.  Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.  Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.  Costs and reasonable attorneys' fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2);

D.  For compensatory and punitive damages in an amount to be determined by a struck jury for Defendant's defamation of Plaintiff;

E.  For this trial to be heard by a jury; and

F.  For all such other and further relief as the Court may deem just and proper.

                                                            */s/ Penny Hays Cauley*
                                                            Penny Hays Cauley, Fed. ID No. 10323
                                                            Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

                                                            */s/ Penny Hays Cauley*
                                                            Of Counsel

**TO BE SERVED VIA CERTIFIED MAIL RESTRICTED DELIVERY:**
Synchrony Bank
c/o Brian D. Doubles - CEO
777 Long Ridge Rd.
Stamford. CT 06902